FILED
99 FEB -5 PM 2: 53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MARGARET JEAN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 97-JEO-1363-M |
| ) | |
| JAMES F. KNIGHT and MACK PORTER, ) | |
| d/b/a WINDSOR WOOD APARTMENTS ) | ENTERED |
| and SOUTHSIDE APARTMENTS, ) | |
| ) | FEB 0 5 1999 |
| Defendants. ) | |

## MEMORANDUM OPINION

In this action, plaintiff Margaret Jean Johnson (the plaintiff), asserts that defendants James F. Knight ("Knight") and Mack Porter illegally discriminated against her because of race and gender when they terminated their working relationship with her in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Presently before the court is the defendants' motion for summary judgment as to all the claims. Upon consideration, the court finds that the defendants' motion for summary judgment is due to be granted in part and denied in part.

### I. FACTUAL SUMMARY

The defendants are partners conducting business as Windsor Wood Apartments and Southside Apartments. The plaintiff, a white female, began working for the defendants in about February 1996 as a maintenance worker. She did clean-up work, general maintenance, and odd jobs for the defendants. She was also a tenant at the Windsor Wood Apartments.

While the plaintiff was performing maintenance work for the defendants, she would often

24

be accompanied by her boyfriend, Mike Graves ("Graves"), who is black. The plaintiff states that Graves is "also an employee of the defendants, doing physical labor and plumbing work that [she] was unable to do [her]self." (Doct. 18, Johnson Affidavit, ¶ 3). The plaintiff states that she "was also visited quite often by Black friends, both on my job and in my apartment." (*Id.*).

The defendants state that it is their policy that "non-employee or non-contractor" personnel are not allowed in any tenant's apartment while maintenance or cleaning activities are being conducted. (Doct. 15, Knight Affidavit, p. 3). On one occasion, the plaintiff was told not to take Graves into tenants' apartments when she was doing maintenance work. (*Id.*, p. 3).

Shortly before her employment with the defendant ended in May 1996, the plaintiff was told by Annette Kitchens, an administrative employee of the defendants, that defendant Knight informed Kitchens that the plaintiff "must be made a 'full-time' employee because [she] had been working 40 to 60 hours per week, on the average." (Doct. 18, Johnson Affidavit, ¶ 2). After that conversation, the plaintiff began receiving a pay check from the defendants with her taxes withheld. She received pay checks on May 14 and May 23, 1996. (*Id.*). She also received a "W-2" form for calendar year 1996 showing earnings of $357.00 and deductions for federal and state income tax, social security, and medicare. (Doct. 18, W-2 form).

On May 22, 1996, the plaintiff received a note from Kitchens. It stated:

> Do not work anymore this week, I got in a lot of trouble about all the hours put in over here. And it has to stop or no one will have a job. James is saying there was [sic] too many un-called for hours turned in.

(Doct. 18, May 22, 1996 note). In the lower left hand corner of the note, there was another short annotation that stated: "We had a lot of complaints about you & your black friends, this is not me. Please understand. Call me here at the office in the morning." (*Id.*). The plaintiff did not return to

2

work after receiving the note.

Defendants state that on May 23, 1996, the resident manager informed the plaintiff "that since vacancies were down, and turnover had decreased, she would not be needed for as many hours as she had been for the last couple of weeks." (Doct. 15, Knight Affidavit, p. 1). They also state that the plaintiff told the resident manager "that she needed full-time work and would be unable to continue on the 'as-needed' basis she had been working under." (*Id*.). The plaintiff's financial difficulties are evidenced by the fact that she owed the defendants for her May rent. After May 23, 1996, the defendants state that she was not called upon to perform any more work as she had insisted on full-time employment and because she refused to pay her past due rent after receiving the two paychecks. (Knight Affidavit, pp. 2-3). In contravention of the defendants' assertions concerning the events surrounding her cessation of work, the plaintiff states:

> I was never told by the defendant [sic] or anyone else that I could or would be called back to work on an "as-needed" basis. I knew I could not pay the rent without the job, so I had to take the little money I had and make an effort to move. I was told that there was not any work for me, but three (3) days after they let me go they hired new help. When I called [I] asked about returning to work, they told me that they had all the help they needed. Since I had no money for necessities of life, such as rent, electricity, fuel and food, I most definitely would have accepted any work offered.

(Doct. 18, Johnson Affidavit, ¶ 5).

## II. DEFENDANTS' OBJECTION TO CERTAIN EVIDENCE

The defendants object to the plaintiff's statement in her affidavit that "Kitchens told me several times that defendants Knight and Porter were racially prejudiced." (Defendants' Reply Brief, p. 7; Johnson Affidavit, ¶ 3). Rule 56(e) of the *Federal Rules of Civil Procedure* states, in pertinent part, that affidavits in support of or in opposition to a motion for summary judgment ". . . shall be

3

of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th

Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## IV. DISCUSSION

### A. The Plaintiff's Claims Under Title VII

The plaintiff brings this action pursuant to Title VII and 42 U.S.C. § 1981, alleging deprivation of her civil rights by the defendants premised upon her gender and race. Her claim of race discrimination is premised upon her assertion that the defendants are discriminating against her because she is a white woman who associates with black persons. The sum and substance of her allegations is found in paragraph nine of her complaint, which provides:

> On or about May 22, 1996, plaintiff Johnson was discharged from her position as a maintenance worker. While so employed, the plaintiff was consistently and frequently harassed and subjected to racial slurs, derogatory racial remarks and derogatory, demeaning, harassing and offensive conduct by the defendants' apartment manager and defendants' employee(s). This conduct was participated in, tolerated and/or condoned by management. Moreover, the plaintiff was the victim of disparate treatment from her superiors in that the plaintiff was disciplined and treated differently, and more severely, than similarly situated white employees for real or imagined infractions. Finally, the plaintiff was discharged on the basis of race (white) and gender (female) and the plaintiff's association with black persons.

(Doct . 1, ¶ 9).

The defendants assert that her Title VII claims of discrimination based on gender and race are procedurally barred for various reasons. First, they challenge her claims of gender discrimination premised on her failure to present the claims to the EEOC. Second, they claim that Title VII does not apply to either claim since the defendants are not employers under Title VII.

### 1. Failure to File an EEOC Claim of Gender Discrimination

Section 2000e-5(e)(1) provides that a party alleging a charge of discrimination must file his

7

or her EEOC charge within 180 days of the unlawful practice. 42 U.S.C. § 2000e-5(e)(1). The plaintiff's timely filed EEOC charge only included a race discrimination claim. It made no reference to a charge of gender discrimination. The first mention of gender discrimination was in the complaint that was filed in this action. In her amended complaint, the plaintiff acknowledges that she did not present a gender discrimination charge to the EEOC. (Doct. 10, ¶ 2). The defendants argue that the claim is therefore barred and due to be dismissed. The court agrees.[1] *Seymore v. Shawver & Sons,* 111 F.3d 794, 799 (10th Cir.), *cert. denied,* ___U.S.___, 118 S. Ct. 342, 139 L. Ed. 2d 266 (1997). The gender claim was never presented to the EEOC and is therefore due to be dismissed.

### 2. Failure to Demonstrate That the Defendants' Employ Fifteen or More Individuals

Title VII applies to any "employer" engaged in an industry affecting commerce who has fifteen or more employees during the requisite period. 42 U.S.C. § 2000e(b). The plaintiff alleges in her complaint that the defendants meet this requirement. The defendants contest this fact in their motion for summary judgment via the affidavit of Knight which asserts that the defendants "are employers of less than 15 employees" and that "[t]here were never 15 employees" during the pertinent period. (Doct. 15, Knight Affidavit, p. 3). The plaintiff initially disputed this in a speculative and conclusory fashion in her affidavit, asserting:

> I know that, at the times I was employed by the defendants, they had more than fifteen (15) people working for them. I do not know how many of them were full-time employees, and I also do not know how many of them were called "contract labor" by the defendants. Some of the so-called contract laborers may have been like I was, working 40-60 hours per week with no taxes being deducted. They were working for the defendants, however, I do know that. Some worked at Windsor

---

[1] The court would additionally note that in response to the defendants' motion for summary judgment, the plaintiff has not presented any evidence supporting her claim of gender discrimination.

8

>Wood Apartments, some worked at Southside Apartments, and some worked at their office. They controlled the work of all of there [sic] people.

(Doct. 18, Johnson Affidavit, ¶ 6). At the hearing on the defendants' motion, counsel for the plaintiff acknowledged to the court that he had reviewed the employment records of the defendants and could not dispute their assertion that they employed less than 15 persons.

As "[t]he plaintiff in an employment discrimination case bears the burden of establishing that the employer falls within the scope of the pertinent statute," the court finds that the plaintiff has failed to designate specific probative facts that would allow the jury to find that the defendants are employers under the definition imposed by Title VII. *Killinger v. Samford University*, 113 F.3d 196, 198 (11th Cir. 1997). Therefore, the defendants' motion is due to be granted as to the plaintiff's gender and race claims advanced under Title VII.

### B. The Plaintiff's Claims Under § 1981

The plaintiff's complaint alleges that her equal protection rights under the Fourteenth Amendment were violated by the defendants' actions in terminating her based on her gender and race. As previously noted, the plaintiff is premising her race claim on the fact that she was terminated by the defendants because she is a white person who associates with black individuals.[2]

#### 1. *McDonnell Douglas* Analysis

##### a. Generally

The Supreme Court's disparate treatment cases, such as *McDonnell Douglas Corp. v. Green*,

---

[2] The court notes that the plaintiff's gender claim is not cognizable under § 1981. *Jones v. Bechtel*, 788 F.2d 571 (9th Cir. 1986)("It is clear that section 1981 does not provide a cause of action based on sex discrimination. *See, e.g., Runyon v. McCrary*, 427 U.S. 160, 167, 96 S. Ct. 2586, 2592-93, 49 L. Ed. 2d 415 (1976) (section 1981 pertains to discrimination based on race, not discrimination based on sex); *White v. Washington Public Power Supply System*, 692 F.2d 1286, 1290 (9th Cir.1982) (same)"). The plaintiff does not dispute this.

9

411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), usually provide the appropriate starting point for evaluating a plaintiff's claim of discriminatory employment actions violating Title VII. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in employment cases, such as the present one, that are brought under 42 U.S.C. § 1981. *Turnes*, 36 F.3d at 1060.

Under the applicable standard in a case like this, where the claims are premised upon circumstantial evidence of discrimination, the plaintiff has the initial burden of establishing a prima facie case of discrimination.[3] *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253-54 & n.6; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997). Once the plaintiff establishes a prima facie case, a legal presumption of unlawful discrimination arises and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254; *Combs*, 106 F.3d at 1528. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55).

---

[3] The court finds that there is no direct evidence of discrimination. In reaching this conclusion, the court considered the statement in the note from Kitchens to the plaintiff which provides, "We had a lot of complaints about you & your black friends....," and determines that this comment does not constitute such a blatant remark that there can be no other intent other than to discriminate. *Early v. Champion Int'l. Co.*, 907 F.2d 1077, 1082 (11th Cir. 1990).

Once the employer meets its burden of production, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture," *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993); *see also Burdine*, 450 U.S. at 255 & n.10, leaving the elements of the prima facie case. *Combs*, 106 F.3d at 1528. When those elements are accompanied by evidence of pretext or disbelief of the defendant's proffered explanation, they may permit, in some instances, a finding for the plaintiff. *Id.* at 1529; *see also Hicks*, 509 U.S. at 511, *Evans*, 131 F.3d at 963. The plaintiff, however, always retains the ultimate burden of proving that he was the victim of intentional discrimination. *Hicks*, 509 U.S. at 508; *Burdine*, 450 U.S. at 253.

The court's task in deciding the defendant's motion for summary judgment is limited. The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct'....The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538 (citations omitted). "The critical element in establishing wrongful discrimination in violation of . . . § 1981 is discriminatory intent." *Givan*, 4 F. Supp. 2d at 1338.

As the plaintiff bears the initial burden of establishing a prima facie case of discriminatory discharge, which includes: (1) that she is a member of a protected class; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4) that her former position was filled by someone not in the protected class. *Givan*, 4 F. Supp. 2d at 1339 and 1340,

11

n.7. She may establish the last element by showing that she was terminated while others having comparable or lesser qualifications who are not in the protected class were retained or that she suffered from differential application of work or disciplinary rules. *Id.*

The defendants contest the third element – that she was discharged. They assert that they had a legitimate basis for their actions since "she chose to discontinue her work with defendants on the 'as needed' basis she had been working" and she would only work on a full-time basis. (Def. Brief, p. 8). They further assert that their actions were justified as she had violated their policy that prohibited non-employees and non-contractors from visiting with an individual while they were working in a tenant's apartment and because she refused to pay back rent. (*Id.*). The defendants' submit the affidavit of James Knight in support of these assertions. (Doct. 15). The plaintiff seeks to rebut the defendants' affidavit by filing her affidavit (doct. 18) wherein she states (1) she was never told she could work on an "as needed" basis, (2) she was told that there was no work for her, and (3) new help was hired after she left.

There are factual disputes between the parties concerning the § 1981 race claim. By way of example, the plaintiff asserts in her affidavit that she was discharged from performing her services and that her discharge was based on her association with black friends. Specifically, she states that she was told there was no work for her. The defendants dispute this, stating that she was not discharged, but that she decided she could no longer work on an as-needed basis. Specifically, they assert it was the plaintiff that told their resident manager that she would not be able to continue on an as-needed basis.

## V. CONCLUSION

Accordingly, for the reasons stated above, defendants' motion for summary judgment is due

to be granted as to the claims advanced under Title VII and the gender discrimination claim under § 1981 and due to be denied as to the race discrimination claim under § 1981.

DONE this the 5th day of February, 1999.

_____
JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE

13